**COMMONWEALTH OF MASSACHUSETTS**
**SUFFOLK COUNTY CIVIL**
**Docket Report**

## 2184CV01845 Gillis, Christopher vs. U.s. Bank, N.a.

| | |
|---|---|
| **CASE TYPE:** Business Litigation | **FILE DATE:** 08/12/2021 |
| **ACTION CODE:** BH2 | **CASE TRACK:** B - Special Track (BLS) |
| **DESCRIPTION:** Complex Unfair Trade Practices | |
| **CASE DISPOSITION DATE:** 09/23/2021 | **CASE STATUS:** Closed |
| **CASE DISPOSITION:** Transferred to another Court | **STATUS DATE:** 09/23/2021 |
| **CASE JUDGE:** | **CASE SESSION:** Business Litigation 1 |

| PARTIES | |
|---|---|

| | | |
|---|---|---|
| **Plaintiff**<br>Gillis, Christopher | **Attorney**<br>Jeffrey Morneau<br>Connor and Morneau, LLP<br>Connor and Morneau, LLP<br>273 State St Second Floor<br>Springfield, MA 01103<br>Work Phone (413) 455-1730<br>Added Date: 08/12/2021 | 643668 |
| **Defendant**<br>U.s. Bank, N.a.<br>425 Walnut Street<br>Cincinnati, OH 45202 | **Attorney**<br>Krystle Guillory Tadesse<br>Locke Lord LLP<br>Locke Lord LLP<br>2800 Financial Plaza<br>Providence, RI 02903<br>Work Phone (401) 528-5873<br>Added Date: 09/17/2021 | 673899 |



# COMMONWEALTH OF MASSACHUSETTS
## SUFFOLK COUNTY CIVIL
### Docket Report

| INFORMATIONAL DOCKET ENTRIES | | | |
|---|---|---|---|
| **Date** | **Ref** | **Description** | **Judge** |
| 08/12/2021 | 1 | Complaint electronically filed. | |
| 08/12/2021 | 2 | Civil action cover sheet filed. | |
| 08/23/2021 | | Notice of 93A complaint sent to Attorney General | |
| 08/26/2021 | 3 | General correspondence regarding NOTICE OF ACCEPTANCE INTO BUSINESS LITIGATION SESSION "BLS1" This matter has been accepted into the Suffolk Business Litigation Session. It has been assigned to BLS1. Dated: Aug. 13, 2021  Notice sent 8/26/21 | Salinger |
| 09/17/2021 | 4 | Defendant U.s. Bank, N.a.'s Notice of Removal (US Dist # 21-cv-11528)  Applies To : Gillis, Christopher (Plaintiff) | |
| 09/17/2021 | | Exhibits/Appendix  of the Notice of Removal | |
| 09/17/2021 | | Attorney appearance On this date Krystle Guillory Tadesse , Esq. added for Defendant U.s. Bank, N.a. | |
| 09/23/2021 | | REMOVED to the U.S. District Court of Massachusetts | |
| 09/23/2021 | | Case transferred to another court. | |

I HEREBY ATTEST AND CERTIFY ON

Sept. 23, 2021 THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY:

First Asst. Clerk

**1**

## COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.

SUPERIOR COURT
DOCKET NO: *21·1845-BLS 1*

CHRISTOPHER GILLIS, Individually and
on behalf of all others similarly situated,
                        Plaintiffs

v.

U.S. BANK, N.A.
                        Defendant

)
)
)
)
)
)
)
)
)

***8/12/2021***

### CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiff, Christopher Gillis ("Plaintiff"), by his attorneys, alleges the following on behalf

of themselves and all others similarly situated ("the Class"). Named as Defendant is U.S. Bank,

N.A. ("U.S. Bank" or "Defendant"). This action arises from Defendant's unjust, unfair, deceptive,

and abusive loan servicing acts and practices with respect to Plaintiff and a proposed class of

persons who were charged and paid a Special Delivery Fee ("Payoff Statement Fee") and

Recording Fee ("Discharge Recording Fee") that were included as part of the Total Amount Due

(a/k/a "Total Amount to Pay Loan in Full") on a Payoff Statement for a property in Massachusetts

("Massachusetts borrowers").

Defendant charged and collected a Payoff Statement Fee and Discharge Recording Fee

from Plaintiff and other persons who had mortgages recorded in Massachusetts when they paid off

their notes in full and satisfied the conditions of their mortgages. The Payoff Statement Fee and

Discharge Recording Fee are unsecured fees that are not authorized by a note or mortgage; are

prohibited by applicable law from being charged or are not authorized or permitted by applicable

law to be charged; cannot be included as part of the Total Amount Due on a Payoff Statement

because they are not part of the indebtedness secured by a note or mortgage; and are not authorized

by HUD or exceed the maximum amount HUD allows to be charged.  As a result of failing to adequately disclose and charging and collecting a Payoff Statement Fee and Discharge Recording Fee from Plaintiff and other persons who had mortgages recorded in Massachusetts, and other unfair and deceptive acts and practices, Defendant was unjustly enriched and violated Massachusetts consumer protection laws.

## PARTIES

1.  Plaintiff, Christopher Gillis, is a resident of Hampden County, Massachusetts.

2.  Defendant, U.S. Bank is a company with a principal office located at 425 Walnut Street, Cincinnati, OH 45202.

## FACTUAL BACKGROUND

3.  On or about January 19, 2016, Plaintiff obtained a loan for personal, family, or household purposes relating to a residence located in Barnstable County, Massachusetts.

4.  The terms of the loan are contained in a Note.

5.  Plaintiff was a borrower under the Note.

6.  The loan was secured by a residential mortgage (the "Mortgage") on Plaintiff's primary residence.

7.  On January 19, 2016, the Mortgage was recorded in the Barnstable County Registry of Deeds in Book 29397, Page 294. *See* **Exhibit A**.

8.  The Lender under the Note and Mortgage was U.S. Bank N.A.

9.  At all relevant times, including times after January 19, 2016, Defendant was a lender, mortgagee, note holder, and/or third-party loan servicer of the loan and/or Mortgage.

10. At all relevant times, including times after January 19, 2016, Defendant held or was assigned a beneficial interest in the Note and Mortgage.

11. At all relevant times, including times after January 19, 2016, if Defendant did not have a beneficial interest in the Note and Mortgage, then Defendant was acting as an agent (mortgage servicer) for the person or entity that held the beneficial interest in the Note and Mortgage.

12. At all relevant times, including times after January 19, 2016, Defendant held or was assigned the servicing rights under the Note and Mortgage.

2

13. At all relevant times, including times after January 19, 2016, Defendant used the instrumentality of interstate commerce or the mails in its business, the principal purpose of which is servicing a loan directly or indirectly, owed or due or asserted to be owed or due to Plaintiff and Massachusetts borrowers.

14. At all relevant times, including times after January 19, 2016, Defendant received scheduled periodic payments from Plaintiff and Massachusetts borrowers relating to their notes and mortgages or other loans.

15. At all relevant times, including times after January 19, 2016, Defendant made payments to the owner of the loans, or other third-party, of principal and interest and other payments with respect to the amounts received by Defendant from Plaintiff and other Massachusetts borrowers.

16. Plaintiff and other Massachusetts borrowers never had a say in whether Defendant or any other third-party held or was assigned a beneficial interest in their notes and mortgages or any other loans or mortgages, or whether Defendant, or any other third-party, held or was assigned the servicing rights under their notes and mortgages or any other loans or mortgages.

## FHA SERVICING RIGHTS

17. FHA, an agency within the United States Department of Housing and Urban Development ("HUD"), provides mortgage insurance on loans made by FHA-approved lenders throughout the United States and its territories.

18. The FHA "is the largest insurer of mortgages in the world, insuring over 47.5 million properties since its inception in 1934.

19. The FHA provides incentives to private lenders to make loans to would-be homebuyers whose creditworthiness and inability to contribute a significant down payment make it difficult for them to obtain a home loan on reasonable terms.

20. To achieve that goal, FHA mortgage insurance provides lenders with protection against losses as the result of homeowners defaulting on their mortgage loans.

21. The lenders bear less risk because FHA will pay a claim to the lender in the event of a homeowner's default.

22. The FHA restricts who can make and service FHA loans.

23. Only FHA-approved Mortgagees may service FHA-insured Mortgages, and those Mortgagees may service Mortgages they hold or that are held by other FHA-approved Mortgagees.

24. Defendant is an FHA-approved Mortgagee.

25. As an FHA-approved Mortgagee, Defendant must annually acknowledge that the Mortgagee is now, and was at all times, subject to all applicable HUD regulations, Handbooks, Guidebooks, Mortgagee Letters, Title I Letters, policies and requirements, as well as Fair Housing regulations and laws including but not limited to 24 CFR § 5.105, Title VIII of the Civil Rights Act of 1968 (the Fair Housing Act) and Title VI of the Civil Rights Act of 1964.

26. The HUD regulations include 24 C.F.R. § 203.552 ("HUD Fee Regulation").

27. HUD's servicing requirements restrict the fees and charges an FHA-approved Mortgagee may collect from the typically lower-income FHA borrower.

28. HUD makes clear the Mortgagee must fully comply with all of the following standards and procedures when servicing a Mortgage insured by the Federal Housing Administration.

29. These mandatory restrictions include limits on the types and amounts of fees and charges an FHA-approved Mortgagee may collect from a borrower.

30. FHA-insured mortgages contain uniform covenants.

31. The uniform covenants incorporate by reference HUD's regulatory limits on allowable fees, including the HUD Fee Regulation.

32. The HUD Servicing Policy and HUD Fee Regulation states that lenders may collect certain reasonable and customary fees and charges from the Borrower after the Mortgage is insured and as authorized by HUD.

33. According to the HUD Servicing Policy, all fees must be:

    a.  reasonable and customary for the local jurisdiction;
    b.  based on the actual cost of the work performed or actual out-of-pocket expenses and not a percentage of either the face amount or the unpaid principal balance of the Mortgage; and
    c.  within the maximum amount allowed by HUD.

4

34. In other words, lenders and mortgage servicers may only collect fees that are authorized by HUD, and fees that are authorized by HUD are only those fees that meet all three of the specified criteria.

35. Thus, for example, a fee that is within the maximum amount allowed by HUD but also generates a profit for the lender would not be allowed.

36. Appendix 3.0 of the HUD Servicing Policy contains an exhaustive list of the servicing fees and charges authorized by HUD and the maximum amounts that may be charged for such fees.

37. The Payoff Statement Fee and Discharge Recording Fee are not on that list.

38. The Payoff Statement Fee and Discharge Recording Fee charged by Defendant are in excess of the maximum amount allowed by HUD.

39. The HUD Servicing Policy further states that the Mortgagee must not charge the Borrower for costs of telephone calls, telegrams, personal visits with the Borrower, certified mail, or other activities that are normally considered a part of a prudent Mortgagee's servicing activity.

40. The HUD Servicing Policy provides that a Mortgagee may request approval from the National Servicing Center (NSC) for any fee, charge, or unusual service not specifically mentioned in this SF Handbook.

41. Defendant did not request approval from the NSC to charge the Payoff Statement Fee of Discharge Recording Fee.

42. The Payoff Statement Fee and Discharge Recording Fee that Defendant charges and collects from borrowers exceeds the out-of-pocket costs incurred by Defendant, and violates mandatory HUD servicing rules that are incorporated into all FHA-insured mortgages.

**THE PAYOFF OF A MORTGAGE AND PAYOFF STATEMENT**

43. Massachusetts law imposes statutory obligations on lenders, mortgagees, note holders, and third-party loan servicers to issue loan payoff statements on all Massachusetts mortgage loans—commercial and residential.

44. A "'Payoff Statement'" is defined as "a statement in writing, including a written print-out by facsimile or other electronic transmission, issued at the request of the mortgagor or an authorized person on his behalf by a mortgagee, mortgage servicer or note holder indicating the amount of the unpaid balance of the mortgage loan, including principal, interest and other charges assessed pursuant to the mortgage loan, which may include the interest on a per diem basis with respect to the unpaid principal balance of the mortgage. A payoff statement shall include, where the context permits, a statement provided to the mortgagor or an authorized person on his behalf

5

by a mortgagee, mortgage servicer or note holder, indicating the amount of the unpaid balance of the mortgage loan or other obligation that must be paid in order to issue a partial release of a mortgage."

45. The purpose of a Payoff Statement is to inform a borrower of the total sum secured by their note and mortgage that must be paid in order satisfy the note and mortgage and for a written Discharge to be issued.

## Request for and Accuracy of Payoff Statement

46. The borrower or an authorized person (such as an attorney) may by written request ask a lender, mortgagee, note holder, and/or third-party loan servicer who is receiving payments under a mortgage note to provide an accurate written payoff statement "sufficient to enable the mortgagor or the authorized person to conclusively make full payment of the outstanding indebtedness under the mortgage . . . as of a certain payment date which shall be specified in the request and which shall be no more than 30 days from the date of request."

47. A lender, mortgagee, note holder, or third-party loan servicer must provide an accurate statement of the total outstanding balance that would be required to pay the borrower's obligation in full as of a specified date.

48. On April 27, 2021, Connor & Morneau, LLP was acting for Plaintiff under a written document as an authorized person for Plaintiff.  *See* Payoff Request Letter attached hereto as **Exhibit B**.

49. Connor & Morneau, LLP made a written request for Plaintiff asking Defendant to provide a written Payoff Statement for June 4, 2021.  *See* **Exhibit B**.

50. The written request for a Payoff Statement asked Defendant to specify an amount certain as of June 4, 2021 which will pay off any and all indebtedness secured by the Mortgage. *See* **Exhibit B**.

51. Upon information and belief, Class Members (or their authorized representatives) also made written requests asking Defendant to provide a written Payoff Statement for dates certain.

## Issuance of Payoff Statements

52. A lender, mortgagee, note holder, or third-party loan servicer who owns the loan or servicing rights must provide an accurate Payoff Statement in written form to the requesting party within five to seven business days of receipt of the payoff request.

53. The Payoff Statement must be accurate when issued.

54. On or about May 20, 2021, Defendant sent a Payoff Statement in written form to Connor & Morneau, LLP and/or Plaintiff by facsimile and/or email. *See* Payoff Statement attached hereto as **Exhibit C**.

55. On or about May 20, 2021, Connor & Morneau, LLP received a Payoff Statement in written form from Defendant by facsimile and/or email. *See* Payoff Statement attached hereto as **Exhibit C**.

56. Upon information and belief, Defendant provided similar Payoff Statements in written form to Class Members (or their authorized representatives) by facsimile and/or email.

### Contents / Accuracy of Payoff Statement

57. Under Massachusetts law, the Payoff Statement must specify: (1) an amount certain as of the payoff date that will pay off all indebtedness secured by the mortgage (or a lesser amount sufficient to obtain a partial release); and (2) a per diem amount or formula to cover payoffs made after the specified payoff date.

58. The May 20, 2021 Payoff Statement was good through June 4, 2021. *See* **Exhibit C**.

59. The Payoff Statement indicated that the indebtedness secured by the Mortgage and the total outstanding balance was $159,393.91, which consisted of the following: (a) Principal Balance of $158,695.02; (b) Interest of $573.89; (c) Recording Fees of $105.00; and (d) Special Delivery Fee of $20.00. *See* **Exhibit C**.

60. The Special Delivery Fee is presumably a fee related to generating and/or delivering the Payoff Statement.

61. The Discharge Recording Fee is presumably a fee related to recording the written Discharge.

62. Plaintiff paid the amount that Defendant indicated on the Payoff Statement was secured by the Note and Mortgage and required to be paid in order to pay off the loan in full, satisfy the mortgage, and obtain a written Discharge.

63. Defendant received the money paid by Plaintiff.

64. Defendant deposited the money paid by Plaintiff into its bank account.

65. Upon information and belief, Class Members also paid the amounts that Defendant indicated on other Payoff Statements was secured by the note and mortgages and required to be paid in order to pay off the loan in full and obtain a written Discharge.

66. Upon information and belief, Defendant received and deposited the monies paid by Class Members into its bank account.

## OBLIGATION TO PROVIDE WRITTEN DISCHARGE FOR FREE

67. Upon payment of all sums secured by the note and mortgage, a Lender or mortgage servicer must issue a written Discharge. *See* **Exhibit A**, ¶ 23.

68. A written Discharge is a duly executed and acknowledged deed of release of a mortgage or other written instrument that, by its terms, discharges or releases a mortgage or the lien thereof or acknowledges payment or satisfaction of a mortgage or the debt or obligation secured by a mortgage or the conditions therein contained.

69. Massachusetts law unconditionally requires a lender, mortgagee, note holder, or third-party loan servicer to issue a discharge within 45 days of receipt of full payment of the mortgage.

70. A mortgagee, mortgage servicer or note holder who receives full payment and satisfaction of the conditions of a mortgage, shall, within 45 days of receipt of payment, either: (i) cause the original written Discharge to be recorded **and** provide to the closing attorney, settlement agent or other person transmitting the payoff, a copy of the written Discharge with the recording information, **or** (ii) provide to the closing attorney, settlement agent or other person transmitting the payoff, the original written Discharge.

71. The mortgage servicer is required to prepare (or have someone else prepare) the original written Discharge in order to meet its statutory obligation to either record the original written Discharge and provide a copy to the closing attorney/settlement agent; or provide the original written Discharge to the closing attorney/settlement agent.

## PAYOFF STATEMENT FEE

72. There is nothing in the Note or Mortgage, or applicable law that requires a borrower to pay a lender, mortgagee, note holder, or third-party loan servicer a Payoff Statement Fee.

73. Under Massachusetts law, a lender, mortgagee, note holder, debt collector, or third-party loan servicer cannot charge a fee for the first payoff statement requested within each six-month period.

74. For each additional request for a payoff statement made during such six–month period, the lender, mortgagee, note holder, debt collector, or third-party loan servicer providing the payoff statement may include therein a reasonable charge for the cost of delivery.

75. Under Federal law, a lender, mortgagee, note holder, debt collector, or third-party loan servicer a may charge a processing fee to cover the cost of providing the payoff statement by fax or courier only.

76. Under Federal law, if a lender, mortgagee, note holder, debt collector, or third-party loan servicer charges a fee for providing a payoff statement by fax or courier, then the lender, mortgagee, note holder, debt collector, or third-party loan servicer must disclose the fee prior to charging the consumer.

8

77. Under Federal law, if a lender, mortgagee, note holder, debt collector, or third-party loan servicer charges a fee for providing a payoff statement by fax or courier, then the lender, mortgagee, note holder, debt collector, or third-party loan servicer must disclose to the consumer that other methods for providing the payoff statement are available at no cost.

78. Under Federal law, a lender, mortgagee, note holder, debt collector, or third-party loan servicer is permitted to charge a consumer a reasonable fee for additional payoff statements during a calendar year in which four payoff statements have already been provided without charge other than permitted processing fees.

79. Defendant charged Plaintiff and the Class a Payoff Statement Fee of $20.00 on the Payoff Statement. *See* **Exhibit C**.

80. The Payoff Statement Fee is for generating a Payoff Statement.

81. Defendant charged Plaintiff and the Class an unreasonable and unusual charge or fee ($20.00) for generating a Payoff Statement.

82. Many other lenders, mortgagees, note holders, or mortgage servicers do not charge a Payoff Statement Fee for generating a Payoff Statement.

83. Many other lenders, mortgagees, note holders, or mortgage servicers that do charge a Payoff Statement Fee for generating a Payoff Statement charge significantly less than $20.00.

84. The Payoff Statement Fee is for delivering a Payoff Statement via fax.

85. Defendant charged Plaintiff and the Class an unreasonable and unusual charge or fee ($20.00) for delivering a Payoff Statement via fax.

86. The Payoff Statement Fee is a processing fee to cover the cost of providing the Payoff Statement via fax.

87. Defendant charged Plaintiff and the Class a processing fee to cover the cost of providing the Payoff Statement via fax.

88. Many other lenders, mortgagees, note holders, or mortgage servicers do not charge a Payoff Statement Fee for delivering a Payoff Statement via fax.

89. Many other lenders, mortgagees, note holders, or mortgage servicers that do charge a Payoff Statement Fee for generating a Payoff Statement charge significantly less than $20.00.

90. Defendant failed to adequately and reasonably disclose the processing fee to Plaintiff and the Class prior to charging the processing fee.

91. Defendant failed to adequately and reasonably disclose that other methods for providing the Payoff Statement were available at no cost.

92. Plaintiff and the Class did not request more than four payoff statements in any calendar year.

93. Defendant did not provide more than four payoff statements to Plaintiff and the Class in any calendar year.

94. Plaintiff did not require the Payoff Statement to be provided via fax.

95. Defendant was not required to provide the Payoff Statement via fax.

96. The Payoff Statement Fee is not a sum secured by the Note or Mortgage.

97. The Payoff Statement Fee is not part of the indebtedness secured by the Note or Mortgage.

98. The Payoff Statement Fee is not a reasonable and customary fee that a lender, mortgagee, note holder, or mortgage servicer charges and collects in Massachusetts.

99. The entire Payoff Statement fee is not predicted upon the actual cost of the work performed.

100.      The entire Payoff Statement Fee is not an out-of-pocket expense of Defendant.

101.      The Payoff Statement Fee cannot be added to or included in the Total Amount Due on a Payoff Statement.

102.      The U.S. Department of Housing and Urban Development ("HUD") Handbook prohibits a mortgage servicer from charging a borrower for activities that are normally considered a part of prudent servicing activities.

103.      The Payoff Statement Fee, which is related to generating a Payoff Statement, delivering a Payoff Statement, and/or providing a Payoff Statement via fax, is normally considered a part of a prudent servicing activities.

104.      The HUD Handbook prohibits a lender or mortgage servicer from charging a borrower for providing information essential to the Payoff.

105.      The Payoff Statement Fee, which is related to generating a Payoff Statement, delivering a Payoff Statement, and/or providing a Payoff Statement via fax, is related to providing information that is essential to the Payoff.

106.      The HUD Handbook prohibits a lender or mortgage servicer from charging a borrower more than $5.00 to transmit a Payoff Statement via fax.

107.    The HUD Handbook prohibits a lender or mortgage servicer from charging a borrower more than $10.00 for additional Payoff Statements after two payoff statements have been provided free of charge for the calendar year.

108.    Defendant charged, collected, recovered and required Plaintiff and the Class Members to pay a Payoff Statement Fee as part of the Payoff and in order to obtain a written Discharge.

109.    Plaintiff and the Class Members paid Defendant a Payoff Statement Fee as part of the Payoff and in order to obtain a written Discharge.

## DISCHARGE RECORDING FEE

110.    There is nothing in the Note, Mortgage or applicable law that requires a borrower to pay a lender, mortgagee, note holder, or third-party loan servicer a Discharge Recording Fee.

111.    In Massachusetts, a lender, mortgagee, note holder, or third-party loan servicer cannot charge, collect, recover or require amounts in excess of the full payment of the Note and Mortgage in order to issue a written Discharge.

112.    Upon information and belief, the mortgage servicer (and not the Lender or other person with a beneficial interest in the Note and Mortgage) directly charged Plaintiff and collected from Plaintiff the Discharge Recording Fee.

113.    Defendant recorded the written Discharge or requested that a third-party record the written Discharge after the Note and Mortgage were fully paid and satisfied.

114.    The written Discharge was not recorded by Defendant or a third-party until after the Note and Mortgage were fully paid and satisfied.

115.    Defendant charged Plaintiff and the Class a Discharge Recording Fee of $105.00 on the Payoff Statement. *See* **Exhibit C**.

116.    Defendant was not charged and did not pay a third-party for recording the written Discharge

117.    Even if Defendant was charged and did pay a third-party for recording the written Discharge, Defendant was not charged and did not pay a third-party for recording the written Discharge until after the Note and Mortgage were fully paid and satisfied.

118.    The Discharge Recording Fee is not a sum secured by the Note or Mortgage.

11

119.    The Discharge Recording Fee is not part of the indebtedness secured by the Note or Mortgage.

120.    The Discharge Recording Fee is not a reasonable and customary fee that a lender or mortgage servicer charges and collects in Massachusetts.

121.    Many other lenders, mortgagees, note holders, or mortgage servicers do not charge a Discharge Recording Fee.

122.    The Discharge Recording Fee cannot be added to or included in the Total Amount Due on a Payoff Statement.

123.    Applicable law does not authorize or permit Defendant to charge a Discharge Recording Fee.

124.    Defendant charged, collected, recovered and required Plaintiff and the Class Members to pay a Discharge Recording Fee in order to obtain a written Discharge. *See* **Exhibit C**.

125.    Plaintiff and the Class Members paid Defendant a Discharge Recording Fee as part of the Payoff and in order to obtain a written Discharge.

## UNFAIR AND DECEPTIVE ACTS OR PRACTICES

126.    The unfair and deceptive acts and practices engaged in by Defendant as lender, mortgagee, note holder, or third-party loan servicer are described above and below and include, but are not limited to, the following:

127.    Defendant, as a third-party loan servicer used unfair or unconscionable means in servicing a loan by charging excessive, unreasonable, and unusual fees to provide loan information.

128.    Defendant charged an excessive, unreasonable, and unusual fee to provide loan information by charging Plaintiff an unsecured Payoff Statement Fee when: (a) such a fee is expressly prohibited by law or not expressly permitted or authorized under the terms and condition of the Mortgage or Applicable Law; and (d) other lenders and mortgage servicers either do not charge a Payoff Statement Fee or charge significantly less than what Defendant charged.

129.    Defendant, as a third-party loan servicer, used unfair or unconscionable means in servicing a loan by misrepresenting material information in connection with the servicing of the loan, including, but not limited to, misrepresenting the amount, nature or terms of any fee or payment due or claimed to be due on a loan, the terms and conditions of the servicing contract or the borrowers' obligations under the loan.

130.    Defendant misrepresented material information in connection with servicing the loan, including, but not limited to, the amount due or claimed to be due on a loan; the nature of the fee or payment claimed to be due on a loan; and the borrowers' obligations under a loan by: (a) including the unsecured and prohibited Payoff Statement Fee and unsecured Discharge Recording Fee as part of the Total Amount Due in the Payoff Statement; (b) charging Plaintiff a Payoff Statement Fee that Plaintiff, the settlement agent/closing attorney were entitled to receive for free; (c) charging Plaintiff a Payoff Statement Fee and Discharge Recording Fee that was not required to be paid by Plaintiff or was not required to be paid at that time.

131.    Defendant, as a third-party loan servicer, used unfair or unconscionable means in servicing a mortgage loan by failing to comply with the provisions of M.G.L. c. 183, § 54D and Regulation Z regarding providing accurate loan payoff information to a consumer and charging a Payoff Statement Fee.

132.    Defendant failed to comply with the provisions of M.G.L. c. 183, § 54D and Regulation Z by: (a) including the unsecured and prohibited Payoff Statement Fee and Discharge Recording Fee as part of the Total Amount Due on the Payoff Statement, because the Total Amount Due on the Payoff Statement was in excess of the actual amount needed to pay off all indebtedness secured by the Mortgage, which caused the Payoff Statement to be inaccurate; (b) charging and collecting an unsecured and prohibited Payoff Statement Fee when a borrower or settlement agent/closing attorney is entitled to a Payoff Statement for free; and (c) charging a Payoff Statement Fee.

133.    Defendant engaged in other unfair and deceptive acts and practices by using false, deceptive, or misleading representation or means in connection with the collection of a debt by falsely representing the character, amount, or legal status of Plaintiff and the Class Members' debt.

134.    Defendant falsely represented the character, amount and legal status of the debt by: (a) including the unsecured and prohibited Payoff Statement Fee and unsecured Discharge Recording Fee as part of the Total Amount Due in the Payoff Statement; (b) charging Plaintiff a Payoff Statement Fee that Plaintiff or the settlement agent/closing attorney were entitled to receive for free; (c) charging Plaintiff a Discharge Recording Fee that was not required to be paid by Plaintiff or was not required to be paid at that time; (d) failing to disclose (i) that the Payoff Statement Fee was being charged by the mortgage servicer (and not the Lender); (ii) what the Payoff Statement Fee was for; (iii) the Payoff Statement fee prior to charging the Payoff Statement Fee; (iv) that other methods for providing the Payoff Statement were available at no cost.

135.    Defendant engaged in other unfair and deceptive acts and practices by using false, deceptive, or misleading representation or means in connection with the collection of a debt by falsely representing the services rendered or compensation which may be lawfully received.

136.    Defendant falsely represented the services rendered or compensation which may be lawfully received by: (a) including the unsecured and prohibited Payoff Statement Fee and unsecured Discharge Recording Fee as part of the Total Amount Due in the Payoff Statement;

13

and (b) failing to disclose (i) that the Payoff Statement Fee was being charged by the mortgage servicer (and not the Lender); (ii) what the Payoff Statement Fee was for; (iii) the Payoff Statement fee prior to charging the Payoff Statement Fee; (iv) that other methods for providing the Payoff Statement were available at no cost.

137.    Defendant engaged in other unfair and deceptive acts and practices by using unfair or unconscionable means to collect or attempt to collect a debt by collecting amounts (including any interest, fee, charge, or expense incidental to the principal obligation) that are not expressly authorized by an agreement creating the debt or permitted by law.

138.    Defendant collected amounts (including interest, fee, charge, or expense incidental to the principal obligation) that were not expressly authorized by an agreement creating the debt or permitted by law by: (a) collecting an unsecured and prohibited Payoff Statement Fee; and (b) collecting an unsecured Discharge Recording Fee.

139.    Defendant engaged in other unfair and deceptive acts and practices by violating provision of the HUD Handbook by: (a) charging a borrower for activities that are normally considered a part of prudent servicing activities; and (b) charging a borrower for providing information essential to the Payoff; and (c) charging a borrower fees that are not reasonable and customary for the local jurisdiction; (d) charging a borrower fees that were not based on the actual cost of the work performed or actual out-of-pocket expenses; and (e) charging a borrower fees that were in excess of the maximum amount allowed by HUD.

140.    Plaintiff only paid the Payoff Statement Fee because the Payoff Statement indicated that it was part of the indebtedness secured by the Note and Mortgage and indicated that payment of the Payoff Statement Fee was required in order to fully pay off the Note and Mortgage and obtain a written Discharge.

141.    Plaintiff would not have paid the Payoff Statement Fee but-for Defendant's unfair and deceptive acts and practices.

142.    Plaintiff only paid the Discharge Recording Fee or only paid the Discharge Recording Fee at that time because the Payoff Statement indicated that it was part of the indebtedness secured by the Note and Mortgage and indicated that payment of the Discharge Recording Fee was required in order to fully payoff the Note and Mortgage and obtain a written Discharge.

143.    Plaintiff either would not have paid the Discharge Recording Fee or would not have paid the Discharge Recording Fee until much later but-for Defendant's unfair and deceptive acts and practices.

144.    As a result of Defendant's violations of Massachusetts laws, Defendant's unfair and deceptive acts and practices, and Defendant's willful and intentional conduct, Plaintiff and the Class Members incurred damages.

14

## CLASS ACTION ALLEGATIONS

145.     The Class allegations are brought pursuant to Rule 23 of the Rules of Civil Procedure.

146.     The Class includes the following:

a.  **Payoff Statement Fee Class**: All persons who were charged and paid a Payoff Statement Fee relating to a mortgage recorded in Massachusetts.

b.  **Discharge Recording Fee Class**: All persons who were charged and paid a Discharge Recording Fee relating to a written Discharge of a mortgage recorded in Massachusetts.

c.  **Payoff Statement Class**: All persons who were charged and paid a Payoff Statement Fee or Discharge Recording Fee that was included as part of the Total Amount Due on a Payoff Statement for a property in Massachusetts.

147.     Plaintiff reserves the right to modify the Class definitions before moving for class certification, including a reservation of the right to seek to certify subclasses, if discovery or other factors reveal that modifying the class definitions and/or seeking additional subclasses would be appropriate.

148.     Plaintiff brings this action on her own behalf and on behalf of a class of all others similarly situated. The Relevant Period is limited to the applicable statute of limitations for claims at issue and runs until the date of entry of final judgment in this action.

149.     **Numerosity**: The Class is composed of at least one hundred (100) people, the joinder of whom is impracticable except by means of a class action.  The disposition of their claims in a class action will benefit the parties and the Court.  Defendant has at least one hundred (100) customers in Massachusetts who meet each of the class definitions above, and thus the Class is sufficiently numerous to make joinder impracticable, if not completely impossible.

150.     **Commonality**:  There is a well-defined community of interest in the questions of law and fact involving and affecting the parties to be represented.  Common questions of law and fact exist and such common questions predominate over any questions of law or fact which may affect only individual Class Members.  Such common questions include but are not limited to the following:

a.  Whether Defendant is a lender, mortgagee, note holder, or third-party loan servicer;
b.  Whether the Payoff Statement Fee is part of the indebtedness secured by the Mortgage;

15

c. Whether a Payoff Statement Fee is expressly prohibited by applicable law or not expressly permitted or authorized under the terms and conditions of the Mortgage or applicable law;

d. Whether Defendant charged Plaintiff and the Class Members a Payoff Statement Fee;

e. Whether Plaintiff and the Class Members paid Defendant a Payoff Statement Fee;

f. Whether the amount of the Payoff Statement Fee is excessive, unreasonable or unusual;

g. Whether the Discharge Recording Fee is part of the indebtedness secured by the Mortgage;

h. Whether a Discharge Recording Fee is expressly prohibited by applicable law or not expressly permitted or authorized under the terms and conditions of the Mortgage or applicable law;

i. Whether Defendant charged Plaintiff and the Class Members a Discharge Recording Fee relating to a Payoff, Mortgage Discharge, Release or Partial Release in Massachusetts;

j. Whether Plaintiff and the Class Members paid Defendant a Discharge Recording Fee relating to a Payoff, Mortgage Discharge, Release or Partial Release in Massachusetts;

k. Whether the Total Amount Due to pay off the indebtedness secured by the Mortgage on the Payoff Statement was accurate;

l. Whether Defendant violated state law of unjust enrichment;

m. Whether, by reason of Defendant's violations of Massachusetts law, Plaintiff and Class Members are entitled to damages; and

n. The nature and extent of damages and other remedies that Plaintiff and Class Members are entitled to under Massachusetts law.

151.    **Typicality**: Plaintiff asserts claims that are typical of the claims of the entire Class because Plaintiff and the Class Members were similarly situated, Plaintiff and the Class Members were similarly injured, and Defendant had common policies, practices, and procedures. Further, there are no defenses available to Defendant that are unique to Plaintiff.

152.    **Adequacy**: Plaintiff and her attorneys will fairly and adequately represent and protect the interest of the Class. Plaintiff has no interests antagonistic of those of the Class. Plaintiff has retained counsel who are competent and experienced in class action litigation.

153.    **Predominance**: Defendant has acted or refused to act on grounds generally applicable to all members of the Class, thereby making final relief concerning the Class as a whole appropriate.

154.    Plaintiff and the Class have suffered injury and damages as a result of Defendant's wrongful conduct as alleged herein. Absent a class action, the Class will continue to suffer injury, thereby allowing these alleged violations of law to proceed without remedy, and allowing Defendant to retain the proceeds of its ill-gotten gains.

155.    **Superiority**: Plaintiff anticipates that there will be no difficulty in the management of this litigation. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## CAUSES OF ACTION

## COUNT I
## UNJUST ENRICHMENT

156.    Plaintiff reasserts and incorporates herein each and every allegation in the preceding paragraphs of this Complaint as if set forth fully herein.

157.    Defendant's practices resulted in Plaintiff and the Class receiving less money and in Defendant receiving more money during the Relevant Period.

158.    The monies paid by Plaintiff and the Class to Defendant (Payoff Statement Fee and Discharge Recording Fee) conferred substantial monetary benefits upon Defendant.

159.    All monies paid to Defendant that should not have been paid by Plaintiff and the Class constitute a monetary benefit that the Defendant sought through the Payoff Statement and voluntarily accepted.

160.    Defendant knew of the monetary benefits conferred upon it by Plaintiff and the Class.

161.    Defendant appreciated the monetary benefits conferred upon it by Plaintiff and the Class by, among other things, depositing the money into one of its bank accounts.

162.    Defendant accepted the monetary benefits conferred upon it by Plaintiff and the Class by, among other things, depositing the money into one of its bank accounts.

163.    Defendant retained the monetary benefits conferred upon it by Plaintiff and the Class by, among other things, deposited the money into one of its bank accounts.

164.    Defendant's acceptance and/or retention of such monetary benefits under the foregoing circumstances alleged in the preceding paragraphs of this Complaint, including but not limited to circumstances where it is illegal for Defendant to charge and collect a Payoff Statement Fee and where Plaintiff is entitled to a written discharge for free, is inequitable.

165.    Defendant was unjustly enriched.

166.    Plaintiff and the Class sustained damages.

## COUNT II
## MASSACHUSETTS GENERAL LAWS – CHAPTER 93A

167.     Plaintiff reasserts and incorporates herein each and every allegation in the preceding paragraphs of this Complaint as if set forth fully herein.

168.     Plaintiff and the Class are persons.

169.     Defendant was engaged in trade or commerce.

170.     Plaintiff and the Class entered into consumer transactions with Defendant.

171.     Defendant engaged in unfair methods of competition, unconscionable acts or practices, and unfair and deceptive acts and practices, in the conduct of trade or commerce.

172.     Defendant's acts, practices, and conduct were willful and knowing violations and invaded the rights of Plaintiff and the Class to be free from unfair and deceptive acts and practices.

173.     More than thirty (30) days prior to filing a claim under Massachusetts General Laws, chapter 93A, Plaintiff made a written demand for relief on Defendant.

174.     Defendant responded to the 93A demand letter in writing and claimed that Plaintiff was charged a fee to fax the Payoff Statement and was charge the cost Defendant incurred to record the discharge of his mortgage.

175.     Defendant's response to the 93A demand letter did not include a reasonable offer of settlement to Plaintiff and/or the Class.

176.     As a proximate and foreseeable consequence of Defendant's violations of 93A, Plaintiff and the Class sustained damages.

## CLAIMS FOR RELIEF

Wherefore, Plaintiff and the Class respectfully request that the Court:

A.  Certify this action as a class action pursuant to Rule 23 of the Massachusetts Rules of Civil Procedure and designate Plaintiff as the representative of the Class and Plaintiff's Counsel as Class Counsel.

B.  Determine the damages sustained by Plaintiff and the Class as a result of Defendant's violations of law, and award any actual damages proved, and direct that

18

Defendant disgorge all unjust enrichment which Defendant received during the Relevant Period.

C. Determine the damages sustained by Plaintiff and the Class as a result of Defendant's violations of Massachusetts General Laws, chapter 93A, and award any actual damages proved; trebled, or statutory damages in the amount of $25.00, whichever is greater.

D. Award Plaintiff and the Class their costs and disbursements of this suit, including, without limitation, reasonable attorneys' fees, expenses and costs.

E. Award Plaintiff and the Class pre-judgment and post-judgment interest as provided by law.

F. Grant Plaintiff and the Class a preliminary and permanent injunction.

G. Grant Plaintiff and the Class such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff, individually and on behalf of all others similarly situated, hereby demands a

trial by jury on all issues so triable.


Dated: August 12, 2021

Plaintiff
By His Attorneys,

/s/ Jeffrey S. Morneau
Jeffrey S. Morneau, Esquire (BBO #643668)
Chelsea Choi, Esquire (BBO # 697440)
CONNOR & MORNEAU, LLP
273 State Street, 2nd Floor
Springfield, Massachusetts 01103
Tel:    (413) 455-1730
Fax:    (413) 455-1594
jmorneau@cmolawyers.com
cchoi@cmolawyers.com


I HEREBY ATTEST AND CERTIFY ON
Sept. 23, 2021, THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY:
First Asst. Clerk

# EXHIBIT

# "A"

Bk 29397 Pg294 #2321
01-19-2016 @ 08:53a

Return To:

U.S. Bank Home Mtg-Final Doc
7601 Penn Ave S, Ste A1
Richfield, MN 55423

Prepared By:

Andrea Dennis
4801 Frederica Street
Owensboro, KY 42301

Property Address:
216 Seventh Ave, West
Hyannisport, MA 02672

---

# Mortgage

### Definitions # 20146312

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A)   "Security Instrument" means this document, which is dated 12/24/2015                , together
with all Riders to this document.

(B)   "Borrower" is Andrew J Gillis, a married man and Christopher T Gillis,
      a single man and Rachel E Gillis, a single woman, as tenants in
      common with rights of survivorship

Borrower is the mortgagor under this Security Instrument.

(C)   "Lender" is U.S. Bank N.A.

      Lender is a National Association
      organized and existing under the laws of The United States Of America
      Lender's address is 4801 Frederica Street, Owensboro, KY 42301

      Lender is the mortgagee under this Security Instrument.

---

2300390286
MASSACHUSETTS – Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

D_V6MA
Form 3022 1/01
VMP6(MA) (1302)
Page 1 of 18

Bk 29397 Pg295 #2321

(C-1) **"Mortgage Broker"** is No Mortgage Broker Was Involved In The Origination Of This Mortgage

Mortgage Broker's post office address is

and Mortgage Broker's license number is

(C-2) **"Mortgage Loan Originator"** is No Mortgage Originator Was Involved In The Origination Of This Mortgage.

Mortgage Loan Originator's post office address is

and Mortgage Loan Originator's license number is

(D)  **"Note"** means the promissory note signed by Borrower and dated 12/24/2015                . The Note states that Borrower owes Lender **One Hundred Eighty-Six Thousand   and 00/100ths**

Dollars (U.S. **$186,000.00**          ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **January 01, 2046**          .

(E)  **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

(F)  **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(G)  **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☒ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(H)  **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(I)  **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(J)  **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(K)  **"Escrow Items"** means those items that are described in Section 3.

2300396285
MASSACHUSETTS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®
Wolters Kluwer Financial Services

D_V6MA
Form 3022 1/01
VMP6(MA) (1302)
Page 2 of 16

Bk 29397 Pg296 #2321

(L)  **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(M)  **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(N)  **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(O)  **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(P)  **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

### Transfer of Rights in the Property

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender and Lender's successors and assigns, with power of sale, the following described property located in the **County**                                     *[Type of Recording Jurisdiction]*
of **Barnstable**                                *[Name of Recording Jurisdiction]:*
**See legal description attached hereto and made a part thereof**

Parcel ID Number: 245081                          which currently has the address of
**216 Seventh Ave**                                                    *[Street]*
**West Hyannisport**              *[City]*, Massachusetts 02672        *[Zip Code]*
("Property Address"):

2300390285
MASSACHUSETTS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                 D V6MA
VMP®                                                                          Form 3022 1/01
Wolters Kluwer Financial Services                                         VMP6(MA)(1302)
                                                                           Page 3 of 18

Bk 29397 Pg297 #2321

N O T                     N O T

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.  C O P Y

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**Uniform Covenants.** Borrower and Lender covenant and agree as follows:

1.  **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

    Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.  **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due.

MASSACHUSETTS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®
Wolters Kluwer Financial Services

2300390285

D VSMA
Form 3022 1/01
VMP6(MA) (1302)
Page 6 of 18

Bk 29397 Pg298 #2321

Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.    **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

2300390255

MASSACHUSETTS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

D_V6MA
Form 3022 1/01
VMP6(MA) (1302)
Page 5 of 18

Bk 29397 Pg299 #2321

N O T                    N O T

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

MASSACHUSETTS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®
Wolters Kluwer Financial Services
2300390285
D V6MA
Form 3022 1/01
VMP6(MA) (1302)
Page 6 of 16

Bk 29397 Pg300 #2321

5.  **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest

MASSACHUSETTS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®
Wolters Kluwer Financial Services

2300390285

D_V6MA
Form 3022 1/01
VMP6(MA) (1302)
Page 7 of 18

to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

MASSACHUSETTS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®
Wolters Kluwer Financial Services
2300390285
D_V6MA
Form 3022 1/01
VMP6(MA) (1302)
Page 6 of 18

Bk 29397 Pg302 #2321

N O T                    N O T

8.  **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.  **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

    Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

    If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance

MASSACHUSETTS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®
Wolters Kluwer Financial Services

2300390285

D V6MA
Form 3022 1/01
VMP6(MA) (1302)
Page 9 of 18

coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a)    Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b)    Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11.    **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

MASSACHUSETTS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®
Wolters Kluwer Financial Services

2300390285

D V6MA
Form 3022 1/01
VMP6(MA) (1302)
Page 10 of 18

Bk 29397 Pg304 #2321

N O T                    N O T

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action

MASSACHUSETTS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®
Wolters Kluwer Financial Services
2300390286
D_V6MA
Form 3022 1/01
VMP6(MA) (1302)
Page 11 of 18

Bk 29397 Pg305 #2321

or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12.  Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13.  Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14.  Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which

230G390285
MASSACHUSETTS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®
Wolters Kluwer Financial Services
D_V6MA
Form 3022 1/01
VMP6(MA) (1302)
Page 12 of 18

Bk 29397 Pg306 #2321

N O T                     N O T

exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

2300390285
MASSACHUSETTS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®
Wolters Kluwer Financial Services

D V6MA
Form 3022 1/01
VMP6(MA) (1302)
Page 13 of 18

Bk 29397 Pg307 #2321

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19.  Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20.  Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

MASSACHUSETTS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®
Wolters Kluwer Financial Services
2300390285
D_VBMA
Form 3022 1/01
VMP6(MA) (1302)
Page 14 of 18

Bk 29397 Pg308 #2321

N O T                 N O T

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21.    **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

230D390288
MASSACHUSETTS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®
Wolters Kluwer Financial Services

D VSMA
Form 3022 1/01
VMP6(MA)(1302)
Page 16 of 18

Bk 29397 Pg309 #2321

**Non-Uniform Covenants.** Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

    If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower, and to other persons prescribed by Applicable Law, in the manner provided by Applicable Law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Waivers.** Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of curtesy and dower in the Property.

230B390285
MASSACHUSETTS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®
Wolters Kluwer Financial Services

D V6MA
Form 3022 1/01
VMP6(MA) (1302)
Page 16 of 16

Bk 29397 Pg310 #2321

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
Christopher T Gillis                    -Borrower

_____ (Seal)
Andrew J Gillis                         -Borrower

_____ (Seal)
Rachel E Gillis                         -Borrower

_____ (Seal)
Alycia  Gillis                          -Borrower

Alycia Gillis signs solely for purpose of waiving marital rights and/or homestead rights without personal obligation for repayment of sums secured by this Security Instrument.

MASSACHUSETTS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    2390390285
VMP®                                                                     D VSMA
Wolters Kluwer Financial Services                                        Form 3022 1/01
                                                                         VMP6(MA) (1302)
                                                                         Page 17 of 18

Bk 29397 Pg311 #2321

NOT              NOT
**Acknowledgment**        AN              AN
State of *Massachusetts* O F F I C I A L     O F F I C I A L
County of *Hampden* C O P Y              C O P Y
On *12/24/2015*        , before me, the undersigned notary public, personally appeared
Christopher T Gillis ~~and Andrew J Gillie   and Raquel E Gillie and~~
~~Alysia  Gillis~~          AN              AN
(JVL)      O F F I C I A L     O F F I C I A L

proved to me through satisfactory evidence of identification, which were *DRIVERS LICENSE*
to be the person(s) whose name(s) is/are signed on the preceding or attached document, and acknowledged
to me that he/she/they signed it voluntarily for its stated purpose.

Notary Public *Jay V Lazzari*

My commission expires: *2/25/2016*

Loan origination organization **U.S. Bank National Association**
NMLS ID **402761**
Loan originator **Racquel Marie Wiley**
NMLS ID **489043**

MASSACHUSETTS – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®
Wolters Kluwer Financial Services
230038028S
D_VBMA
Form 3022 1/01
VMP6(MA) (1302)
Page 18 of 18

Bk 29397 Pg312 #2321

Acknowledgment
State of *Colorado*          N O T               N O T
County of *Eagle*            A N                 A N
On *December 29, 2015*       F I C I A L         O F F I C I A L
, before me, the undersigned notary public, personally appeared
~~Christopher T Gillis~~ and Andrew J Gillis  and ~~Raquel E Gillis~~  and
~~Alycia Gillis~~ *gh.*                        N O T               A N
                             O F F I C I A L    O F F I C I A L
proved to me through satisfactory evidence of identification, which were Y
to be the person(s) whose name(s) is/are signed on the preceding or attached document, and acknowledged
to me that he/she/they signed it voluntarily for its stated purpose.

*Audrey Jane Spaulding*
Notary Public

My commission expires: *12 - 22 - 2019*

AUDREY JANE SPAULDING
Notary Public
State of Colorado
Notary ID 20034042936
My Commission Expires Dec 22, 2019

Loan origination organization **U.S. Bank National Association**
NMLS ID **402761**
Loan originator **Racquel Marie Wiley**
NMLS ID **489043**

MASSACHUSETTS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®
Wolters Kluwer Financial Services
2300390286

D_VEMA
Form 3022 1/01
VMP6(MA) (1302)
Page 18 of 18

N O T                  N O T
A N                    A N
**Acknowledgment**
**State of** Colorado  F I C I A L     O F F I C I A L
**County of** Denver   C O P Y         C O P Y
**On** 12-31-2016       , before me, the undersigned notary public, personally appeared
~~Christopher T Gillis~~ and ~~Andrew J Gillis~~ and Rachel E Gillis and
~~Alycia Gillis~~          A N               A N
       O F F I C I A L    O F F I C I A L   Drive License
proved to me through satisfactory evidence of identification, which were Drive License
to be the person(s) whose name(s) is/are signed on the preceding or attached document, and acknowledged
to me that he/she/they signed it voluntarily for its stated purpose.

> DAVID BRYAN HARBUTTE
> NOTARY PUBLIC
> STATE OF COLORADO
> NOTARY ID 20034031149
> MY COMMISSION EXPIRES OCTOBER 11, 2019

_____
*Notary Public*

*My commission expires:*   10-11-19

Loan origination organization **U.S. Bank National Association**
NMLS ID **402761**
Loan originator **Racquel Marie Wiley**
NMLS ID **489043**

MASSACHUSETTS – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®
Wolters Kluwer Financial Services
2300390285

D_V6MA
Form 3022 1/01
VMP6(MA) (1302)
Page 18 of 18

Bk 29397 Pg314 #2321

**Acknowledgment**
State of Colorado
County of Pitkin
On January F14, 2016, before me, the undersigned notary public, personally appeared
~~Christopher T Gillis~~ and ~~Andrew J Gillis~~ and ~~Raphel E Gillis~~ and
Alycia Gillis

proved to me through satisfactory evidence of identification, which were Y
to be the person(s) whose name(s) is/are signed on the preceding or attached document, and acknowledged
to me that he/she/they signed it voluntarily for its stated purpose.

Notary Public

My commission expires: 12-22-2019

AUDREY JANE SPAULDING
Notary Public
State of Colorado
Notary ID 20034042936
My Commission Expires Dec 22, 2019

Loan origination organization **U.S. Bank National Association**
NMLS ID 402761
Loan originator **Racquel Marie Wiley**
NMLS ID 489043

MASSACHUSETTS – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT      2360390265
VMP®                                                                                                                                D V6MA
Wolters Kluwer Financial Services                                                                                        Form 3022  1/01
                                                                                                                                           VMP6(MA) (1302)
                                                                                                                                           Page 18 of 18

Bk 29397 Pg315 #2321

N O T           N O T
        A N           A N

**Acknowledgment**

State of _Colorado_ F I C I A L    O F F I C I A L

County of _Ø, t Kic_ O P Y      C O P Y

On _JAnuAy 01 201_, before me, the undersigned notary public, personally appeared ~~Christopher T Gillis~~ and ~~Andrew J Gillis~~ and ~~Rachel E Gillis~~ and Alycia Gillis

         A N         A N

O F F I C I A L    O F F I C I A L

proved to me through satisfactory evidence of identification, which were
to be the person(s) whose name(s) is/are signed on the preceding or attached document, and acknowledged to me that he/she/they signed it voluntarily for its stated purpose.

_Audrey Jan Spaulding_
Notary Public

```
AUDREY JANE SPAULDING
       Notary Public
    State of Colorado
  Notary ID 20034042936
My Commission Expires Dec 22, 2019
```

My commission expires: _12 -22 - 2019_

Loan origination organization **U.S. Bank National Association**
NMLS ID **402761**
Loan originator **Racquel Marie Wiley**
NMLS ID **489043**

MASSACHUSETTS – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®
Wolters Kluwer Financial Services

2306390285

D_V6MA
Form 3022 1/01
VMP6(MA) (1302)
Page 18 of 18

Bk 29397 Pg316 #2321

N O T        N O T
A N          A N
O F F I C I A L        O F F I C I A L
C O P Y        C O P Y

N O T        N O T
A SECOND HOME RIDER
O F F I C I A L        O F F I C I A L

THIS SECOND HOME RIDER is made this 24th  C O day of December, 2015
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed
of Trust, or Security Deed (the "Security Instrument") of the same date given by the
undersigned (the "Borrower" whether there are one or more persons undersigned) to secure
Borrower's Note to U.S. Bank N.A.

(the "Lender") of the same date and covering the Property described in the Security
Instrument (the "Property"), which is located at:

216 Seventh Ave, West Hyannisport, MA 02672
[Property Address]

In addition to the covenants and agreements made in the Security Instrument, Borrower
and Lender further covenant and agree that Sections 6 and 8 of the Security Instrument are
deleted and are replaced by the following:

**6. Occupancy.** Borrower shall occupy, and shall only use, the Property as
Borrower's second home. Borrower shall keep the Property available for Borrower's
exclusive use and enjoyment at all times, and shall not subject the Property to any
timesharing or other shared ownership arrangement or to any rental pool or
agreement that requires Borrower either to rent the Property or give a management
firm or any other person any control over the occupancy or use of the Property.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan
application process, Borrower or any persons or entities acting at the direction of
Borrower or with Borrower's knowledge or consent gave materially false, misleading,
or inaccurate information or statements to Lender (or failed to provide Lender with
material information) in connection with the Loan. Material representations include,
but are not limited to, representations concerning Borrower's occupancy of the
Property as Borrower's second home.

2300390285                      D_V365R
MULTISTATE SECOND HOME RIDER - Single Family - Fannie Mae/Freddie Mac UNIFORM
INSTRUMENT
Form 3890 1/01                     Page 1 of 2              Initials: GG
VMP-365R (0811)         VMP Mortgage Solutions, Inc. (800)521-7291

Inf.JS AT4

REG

Bk 29397 Pg317 #2321

NOT            NOT
AN             AN
OFFICIAL       OFFICIAL
COPY           COPY

NOT            NOT

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained
in this Second Home Rider.

_____ (Seal)        _____ (Seal)
Christopher T Gillis      -Borrower      Andrew J Gillis          -Borrower

_____ (Seal)        _____ (Seal)
Rachel E Gillis           -Borrower      Alycia  Gillis           -Borrower

_____ (Seal)        _____ (Seal)
                          -Borrower                               -Borrower

_____ (Seal)        _____ (Seal)
                          -Borrower                               -Borrower

2300390285                      D_V365R

**MULTISTATE SECOND HOME RIDER** - Single Family – Fannie Mae/Freddie Mac UNIFORM
INSTRUMENT                                            Form 3890 1/01
VMP-365R (0811)                      Page 2 of 2

Bk 29397 Pg318 #2321

N O T
A N
O F F I C I A L
C O P Y

N O T
A N
O F F I C I A L
C O P Y

N O T
A N
O F F I C I A L
C O P Y

N O T
A N
O F F I C I
C O P Y

Order No.:    20146312
Loan No.:    2300390285

## Exhibit A

The following described property:

A certain parcel of land together with the buildings thereon situated in Barnstable (West Hyannisport), Barnstable County, Massachusetts, bounded and described as shown on a Subdivision Plan hereinafter mentioned, as follows
Northerly by Lots 535 and 520, One Hundred and 4/100 (100.04) feet;

Easterly by Lot B, Eighty and 00/100 (80) feet

Northeasterly by Lot B, One Hundred Eight and 05/100 (108.05) feet;

Southerly by Cross Street, Seventy-Two and 63/100 (72.63) feet;

Southwesterly by Seventh Avenue, One Hundred Eighty-Eight and 70/100 (188.70) feet.

Being Lot A as shown on the plan entitled "Subdivision Plan of Land in West Hyannisport Mass. for N. Ronald Silberstein" dated September 1967 made by Barnstable Survey Consultants, Inc., containing an area of 10,955 square feet, according to said plan, which plan is filed in the Barnstable County Registry of Deeds in Plan Book 218 page 23.

Subject to a road taking by the Town of Barnstable for Seventh Avenue by instrument recorded on April 10, 1953 in Book 838 page 573.

There is granted herewith the right to use together with others, including grantor, it's heirs and assigns as owners of Lot B shown on aforesaid Plan, any rights and right-of-way appurtenant to the above described premises as set forth in the deed from Manuel M. Kaufman dated May 24, 1966, recorded on May 27, 1966, in Barnstable County Registry of Deeds, Book 1336 page 981.

Being the same parcel conveyed to James R. Gillis, Andrew J. Gillis, Christopher T. Gillis and Rachel E. Gillis from James R. Gillis, by virtue of a Deed Dated 10/17/2014, Recorded 11/5/2014, in Deed Book 28490, Page 202, as Instrument No. 51141 County of Barnstable, State of Massachusetts.

Assessor's Parcel No:    245-081

JOHN F. MEADE, REGISTER
BARNSTABLE COUNTY REGISTRY OF DEEDS
RECEIVED & RECORDED ELECTRONICALLY

# EXHIBIT

# "B"



# CONNOR  MORNEAU

273 State Street, 2nd Floor
Springfield, MA 01103
Phone: (413) 455-1730
Fax: (413) 455-1594
www.cmolawyers.com

4/27/2021

**Payoff Request Letter- M.G.L. c. 183 §54D**
**SALE OF REAL ESATE**

FAX TRANSMITTAL:
EMAIL: 800 - 200 - 8772

Attention:

**Mortgage Loan Payoff Department**

RE:: **Mortgagor(s):** **Andrew J. Gillis, Christopher T. Gillis and Rachel E Gillis**
**Address:** **216 Seventh Avenue, West Hyannisport, Massachusetts**
**Loan No.:** 2300390285
**Gillis, A. Soc. Sec:** XXX-XX-
**Gillis, C. Soc Sec.:** XXX-XX-9616
**Gillis, R. Soc. Sec.:** XXX-XX-

Dear Sir/Madam:

In accordance with Massachusetts General Laws Chapter 183, Section 54D, please consider this correspondence a formal authorization and request to issue a written pay-off statement relating to the above-referenced account to this office within five (5) business days of receipt of this notice. Please send the payoff statement directly to **Rebecca Willoughby** by fax at **413-455-1594** or email at **rwilloughby@cmolawyers.com.**

Pursuant to M.G.L. c. 183 §54D, said pay-off statement:

(i) shall be sufficient to enable our office to conclusively make full payment of the outstanding indebtedness under the mortgage note or other financial obligation as of **June 4, 2021** (which shall be no more than thirty (30) days from the date of request);

(ii) shall specify an amount certain, as of **June 4, 2021**, which will pay off any and all indebtedness secured by the mortgage;

(iii) shall include a specific amount of any additional payment which may be due or a specific formula or method for calculating the specific amount that may be due, such as by reference to a per diem amount, in the event the payoff is received later than the payoff date requested above:

(iv) may condition the payoff amount, or any additional amount due beyond the specified payoff date, on any escrow or other disbursements that the Mortgage, Mortgage Servicer or Note Holder may be permitted or required under the terms of the mortgage to be made between the payoff date above and 30 days thereafter, provided, that the pay-off statement shall

[Type here]

specify the nature, amount and anticipated payment date for the disbursements, if known or reasonably ascertainable;

**(v)** may impose a time limitation on the validity of the payoff statement of no less than 30 days from issuance.

In closing, please be advised that, pursuant to M.G.L. c. 183 §54D(f), one (1) payoff statement may be requested without charge during any six-month period but the Mortgage Holder may charge a reasonable fee for any additional fee for any additional payoff requests within such six-month period. Please advise if any other payoff requests have been made to you within the last six months and whether you intend to charge for the payoff statement requested by this letter and, what the charge will be.

Please be advised, also, that you are responsible to provide the requested payoff statement who, without reasonable cause, fails to provides a timely payoff statement as required by M.G.L. c. 183 §54D(e), may be liable to the mortgagor for the greater of $500.00 or the mortgagor's actual damages caused by the failure, plus reasonable attorney' s fees and costs.

Sincerely,

*Matthew L. Donohue of Law*

Matthew l. Donohue, Esq.
**For questions or concerns, please contact email address: rwilloughby@cmolawyers.com**

### Borrower Authorization

The undersigned hereby authorize(s) the above lender to immediately issue a written payoff statement for the above-referenced account to Connor & Morneau, LLP, if said is a home equity line of credit or contains the right of future advances, you are hereby directed to immediately freeze said account and directed to dishonor any checks or coupons drawn on said account, or any other advances requested by the undersigned, if honoring said checks, coupons or other requests for advances would result in a modification of the payoff statement.

_____    CHRISTOPHER T. GILLIS _____
Borrower                                               Borrower

_____
Borrower

Note: For the purpose of this form, the term "mortgagee" shall mean the original mortgagee or a record successor or a successor thereto by operation of Law pursuant to M.G. L. c. 183 §55(i)

P. 1

* * * Communication Result Report ( May. 11. 2021  9:47AM ) * * *

1)
2) Connor, Morneau & Olin, LLP

Date/Time: May. 11. 2021  9:45AM

| File No. | Mode | Destination | Pg(s) | Result | Page Not Sent |
|---|---|---|---|---|---|
| 1047 | Memory TX | 18002008772 | P.  2 | OK | |

---

Reason for error
    E. 1) Hang up or line fail          E. 2) Busy
    E. 3) No answer                      E. 4) No facsimile connection
    E. 5) Exceeded max. E-mail size

 

**CONNOR MORNEAU**

275 State Street, 2nd Floor
Springfield, MA 01103
Phone: (413) 455-1730
Fax: (413) 455-1594
www.cmolawyers.com

4/27/2021

Payoff Request Letter- M.G.L. c. 183 §54D
**SALE OF REAL ESTATE**

FAX TRANSMITTAL:
EMAIL:                800 - 200 - 8772

Attention:

Mortgage Loan Payoff Department

RE:    Mortgagor(s):    Andrew J. Gillis, Christopher T. Gillis and Rachel E Gillis
        Address:        216 Seventh Avenue, West Hyannisport, Massachusetts
        Loan No.:       1300570275
        Gillis, A. Soc. Sec.:    XXX-XX-
        Gillis, C. Soc. Sec.:    XXX-XX-9616
        Gillis, R. Soc. Sec.:    XXX-XX-

Dear Sir/Madam:

        In accordance with Massachusetts General Laws Chapter 183, Section 54D, please consider this correspondence a formal authorization and request to issue a written pay-off statement relating to the above-referenced account to this office within five (5) business days of receipt of this notice. Please send the payoff statement directly to Rebecca Willoughby by fax at 413-455-1594 or email at rwilloughby@cmolawyers.com.

        Pursuant to M.O.L. c. 183 §54D, said pay-off statement:

(i) shall be sufficient to enable our office to conclusively make full payment of the outstanding indebtedness under the mortgage note or other financial obligation as of June 4, 2021 (which shall be no more than thirty (30) days from the date of request);

(ii) shall specify an amount certain, as of June 4, 2021, which will pay off any and all indebtedness secured by the mortgage;

(iii) shall include a specific amount of any additional payment which may be due or a specific formula or method for calculating the specific amount that may be due, such as by reference to a per diem amount, in the event the payoff is received later than the payoff date requested above;

(iv) may condition the payoff amount, or any additional amount due beyond the specified payoff date, on any escrow or other disbursements that the Mortgage, Mortgage Servicer or Note Holder may be permitted or required under the terms of the mortgage to be made between the payoff date above and 30 days thereafter, provided, that the pay-off statement shall

# EXHIBIT

# "C"



# FAX

**To:** MATTHEW L DONOHUE
Company:
Fax: 14134551594
Phone:

**From:** Naveen Kumar Kaldhindi
Fax:
Phone:
E-mail:

**NOTES:**

Date and time of transmission: 5/20/2021 7:19:28 AM
Number of pages including this cover sheet: 3

XP021

May 20, 2021
Faxed
Payoff statement

U.S. Bank
Attn: Payment Processing
4801 Frederica Street
Owensboro, KY 42301
Phone: 800.365.7772
Fax: 800.227.6736

TO:
Christopher T Gillis
290 High St
Holyoke MA 01040

Loan number: 2300390285
Loan type: CONV W/O PMI
Investor: Federal Natl Mtg Assn
Product line code: 601
Property address:
216 Seventh Ave
West Hyannisport MA 02672

Re:
Christopher T Gillis

290 High St
Holyoke MA 01040

This payoff statement reflects the payoff figures as of the date of the
statement only. Issuance of this statement does not suspend the contract
requirements to make the mortgage payments when due. A late charge of
$ 26.48 will be assessed if payment is not received within the grace
days stated within the terms of the note. The late charge should be added
to the payoff total if the payoff amount is sent after that time.

These figures are payable to June 04, 2021.
This loan is due for the June 01, 2021 payment.
Current first unpaid principal balance                         158,695.02
Interest at  3.95000% on first principal balance                  573.89
Recording Fees                                                    105.00
Special Delivery Fee                                               20.00

* * TOTAL AMOUNT TO PAY LOAN IN FULL * *        $          159,393.91

Total amount to pay loan in full represents the amount necessary to
pay your loan in full, obtain a release of mortgage and satisfy other
fees and charges assessed to your home loan account.

Payoff funds received after June 04, 2021 will require an additional
$ 17.17 interest per Day on the first principal balance.

Payoff figures are subject to change due to loan adjustments, returned
bank items, payment of any escrowed items such as taxes and insurance
as they become due, or if the payoff figures provided herein have been
inadvertently miscalculated. Additional fees or costs may be added if
your loan becomes delinquent. Recording fees are subject to change
without notice due to adjustments made by county recording offices.

The current escrow/impound balance is $ 2,785.66. The escrow account
balance will be mailed to the mortgagor of record 20 business days after
receipt of the payoff funds (excluding legal public holidays, Saturdays

and Sundays). The escrow balance will not be mailed if it has already been deducted from the total payoff. See escrow information sheet.

If the payoff funds are insufficient to pay the total amount owed to pay off this loan, we may use funds in the escrow balance to cover the short payoff. If the escrow balance is insufficient to pay off the total amount owed, we will return the payoff funds and an updated quote will need to be ordered.

All lender-placed insurance will be canceled when the home loan is paid in full.

If your home loan is automatically drafted, please advise us 15 business days prior to the draft date, so the draft can be canceled. To advise us, please contact customer service at 800.365.7772 or visit our website at usbank.com.

Payoff funds must be sufficient to cover all principal, interest, escrow advances, prepayment penalties, fees and charges, or you may accrue additional interest.

Please include our loan number on the payoff check. Funds sent by overnight courier or regular mail must be sent to the above address and include sufficient interest to allow for mail delivery. Payoff funds are accepted Monday through Friday between 8 a.m. and 4 p.m. CT.

Check processing notice: By sending your personal check to U.S. Bank, you are authorizing conversion of your check to a one-time ACH debit from your account. If converted, only the amount of the check will be debited with no additional charges. Your paper check will be destroyed, and you will not receive your check back. If your loan is in foreclosure or bankruptcy, only certified funds will be accepted.

*** To enhance timely processing of payment in full, the following wiring instructions are provided:
U.S. Bank, Newport KY
ABA: 042000013   Account number: 194039483 Attn: Payment Processing
Re: Loan number 2300390285 Mortgagor's name: Christopher T Gillis

Payoff statements returned via fax will be charged a $5 fee for FHA loans and a $20 fee for VA and conventional loans. This is a special delivery fee to be incurred by the party requesting the payoff statement.

We appreciate your business and are here to help. If you have questions, please contact customer service at 800.365.7772 from 7 a.m. to 8 p.m. CT Monday through Friday or 8 a.m. to 2 p.m. CT on Saturday or visit usbank.com.

Sincerely,

Payoff Department
800.365.7772
XP021 515

**2**

| CIVIL ACTION COVER SHEET | DOCKET NO(S) B.L.S.<br>21. 1846 BLS | Trial Court Of Massachusetts Superior Court Department County:<br>SUFFOLK |
|---|---|---|

| PLAINTIFF(S)<br>CHRISTOPHER GILLIS, Individually and on behalf of all other similary situated | DEFENDANT(S)<br>U.S. BANK, N.A. |
|---|---|

| ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE Board of Bar Overseers number<br>Jeffrey S. Morneau, Connor & Morneau, LLP 273 State Street, 2nd Floor, Springfield, MA 01103<br>BBO: 643668 | ATTORNEY (if known) |
|---|---|

Origin Code Original Complaint

BH 2                                                   *8/12/2021*

TYPE OF ACTION AND TRACK DESIGNATION (See reverse side) CODE NO. TYPE OF ACTION (specify) TRACK IS THIS A JURY CASE? * _____
B H2 _____ (B) ☑ Yes ☐ No

# UNFAIR TRADE PRACTICES

The following is a full and detailed statement of the facts on which plaintiff relies to determine eligibility in to The Business Litigation Session.

This case is a putative class action under Massachusetts General Las, chpater 93A relating to a Payoff Statement Fee ($20.00) and Discharge Recording Fee ($105.00) that were: charged by a lender and/or mortgage servicer to consumers; included on a Payoff Statement as part of the Total Amount Due; required to be paid by consumers to the lender and/or mortgage servicer in order to pay off the indebtedness secured by a residential mortgage and obtain a written discharge; not authorized by by HUD or exceed the maximum amount HUD allows to be charged.

* A Special Tracking Order shall be created by the Presiding Justice of the Business Litigation Session at the Rule 16 Conference.

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT.

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods." Signature of Attorney of Record _____
DATE: AUGUST 12, 2021

Sept. 23, 2021 THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY: _____
First Asst. Clerk

# CIVIL ACTION COVER SHEET
## INSTRUCTIONS

### SELECT CATEGORY THAT BEST DESCRIBES YOUR CASE

BA.1 claims relating to the governance and conduct of internal of entities
BA.2 claims relating to employment agreements
BA.3 claims relating to liability of shareholders, directors, officers, partners etc.

BB.1 shareholder derivative claims
BB.2 claims relating to or arising out of securities transactions

BC.1 claims involving mergers, consolidation, sales of assets, issuance of debt, equity and like interests

BD.1 claims to determine the use or status of, or claims involving, intellectual property
BD.2 claims to determine the use or status of, or claims involving, confidential, property or trade secret information
BD.3 claims to determine the use or status, or claims involving restrictive covenants

BE.1 claims involving breaches of contract or fiduciary, fraud, mis-representation business torts or other violations involving business relationships

BF.1 claims under the U.C.C. involving complex issues
BG.1 claims arising from transactions with banks, investment bankers

BH.1 claims for violation of antitrust or other trade regulation laws
BH.2 claims of unfair trade practices involving complex issues

BL.1 malpractice claims by business enterprises against professionals

BJ.1 claims by or against a business enterprise to which a government entity is a party

BK.1 other commercial claims, including insurance, construction, real estate and consumer matters involving complex issues

TRANSFER YOUR SELECTION TO THE FACE SHEET

EXAMPLE:

| CODE NO. | TYPE OF ACTION (SPECIFY) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| BD3 | Restrictive covenants | (B)* | Yes    No |

DUTY OF THE PLAINTIFF. The plaintiff, or plaintiff's counsel, shall set forth, in the face sheet a statement specifying in full detail the facts upon which the plaintiff then relies for "presumptive" entry into the Business Litigation Session. A copy of the civil action cover sheet shall be served on all defendants, together with the complaint.

DUTY OF THE DEFENDANT. Should the defendant contest the entry into the Business Litigation Session, the defendant shall file with the answer (or dispositive motion) a statement specifying why the action does not belong in the Business Litigation Session. Such Statement shall be served with the answer (or dispositive motion).

A CIVIL ACTION COVER SHEET MUST BE FILED WITH EACH COMPLAINT.

FAILURE TO COMPLETE THIS COVER SHEET THOROUGHLY AND ACCU-RATELY MAY RESULT IN THE TRANSFER OF THIS ACTION FROM THE BUSINESS LITIGATION SESSION TO ANOTHER APPROPRIATE SESSION OF THE SUPERIOR COURT.

* A special tracking order shall be created by the presiding justice of the Business Litigation Session at the Initial Rule 16 Conference.

08/24 ✓

**Commonwealth of Massachusetts**
**County of Suffolk**
**The Superior Court – Business Litigation Session**

**3**

CIVIL DOCKET#: **2184CV01845-BLS1**

Case:   Gillis v. U.S. Bank, N.A.

Notice Sent
08.26.21 (NS)
-CDM/JM.

### NOTICE OF ACCEPTANCE INTO BUSINESS LITIGATION SESSION

This matter has been accepted into the Suffolk Business Litigation Session. It has been assigned to **BLS1**.

Hereafter, as shown above, all parties must include the initials **"BLS1"** at the end of the docket number on all filings.

Counsel for the plaintiff(s) is hereby advised that within seven (7) days of the filing of an appearance, answer, motion or other response to the complaint by or on behalf of the defendant(s) which has been served with process within the time limitation of Mass. R. Civ. P. 4(j), or such other time as may be modified by the Court, he or she shall send notice thereof to the appropriate BLS Session Clerk at Suffolk Superior Court, Three Pemberton Square, Boston, MA 02108.

Upon receipt of such notice, the Court will issue a Notice of Initial Rule 16 Conference for purposes of meeting with all counsel.  Before the Rule 16 Conference, counsel shall discuss with their clients and with opposing counsel whether the parties will participate in the BLS Project on Discovery (counsel are directed to www.mass.gov/superior-court-business-litigation-session for description of the Project).  Counsel may indicate their respective client's participation by completing, filing, and serving the attached form.  If by the date of the initial Rule 16 Conference, not all parties have given notice of their participation, counsel shall be prepared to discuss at that conference whether their clients will participate in the Project.

The Court requests that plaintiff's counsel serve on opposing parties a copy of this notice and the attached form.

Dated:  Aug. 13, 2021

I HEREBY ATTEST AND CERTIFY ON
Sept. 23, 2021, THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY: _____
First Asst. Clerk

/s/ Kenneth W. Salinger

_____
Kenneth W. Salinger
Justice of the Superior Court &
Administrative Justice of the Business Litigation Session

**4**

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.
SUPERIOR COURT
DOCKET NO.: 2184CV01845

CHRISTOPHER GILLIS, Individually and :
On behalf of all others similarly situated, :
:                        US Dist # 21 - CV - 11528
                   Plaintiffs,           :
                                         :
                                         :
        v.                               :
                                         :           E-FILED 9/17/2021
U.S. BANK, N.A.                          :
                                         :                              BL
                   Defendant.            :

**DEFENDANT'S NOTICE OF REMOVAL**

Pursuant to 28 U.S.C. §§ 1441, 1332(d) and 1453(b), defendant, U.S. Bank, N.A. ("U.S.

Bank" or "Defendant"), by and through its undersigned counsel, hereby give notice that

Defendant's Notice of Removal was filed with the United States District Court, District of

Massachusetts on September 17, 2021. *See* Defendant's Notice of Removal, attached hereto as

Exhibit A.

Respectfully submitted,

Defendant,
U.S. BANK, N.A.

By its Attorneys,
LOCKE LORD, LLP

/s/Krystle G. Tadesse
Krystle G. Tadesse (BBO #673899)
2800 Financial Plaza
Providence, RI 02903
401.528-5873
krystle.tadesse@locklord.com

and

I HEREBY ATTEST AND CERTIFY ON
Sept. 23, 2021, THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT
BY:
First Asst. Clerk

Stephanie Sprague (BBO # 667714)
111 Huntington Avenue
Boston, MA 02199
617.239-0222
stephanie.sprague@lockelord.com

Date:  September 17, 2021

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on the 17th day of September, 2021 this document, has been served via first class mail, postage pre-paid, upon the parties at:

Jeffrey S. Morneau, Esq.
Chelsea Choi, Esq.
Connor & Morneau, LLP
273 State Street, 2nd Floor
Springfield, MA  01103

/s/ Krystle G. Tadesse

2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

**E-FILED 9/17/2021**

CHRISTOPHER GILLIS, Individually and  :
On behalf of all others similarly situated,  :
:
Plaintiffs,  :
:
v.  :
:
U.S. BANK, N.A.  :
:
Defendant.  :



Certified to be a true and
correct copy of the original
Robert M. Farrell, Clerk
U. S. District Court
District of Massachusetts

By: _____
**Deputy Clerk**

Date: 09/17/2021

**NOTICE OF REMOVAL**

Pursuant to 28 U.S.C. §§ 1441, 1332(d) and 1453(b), defendant, U.S. Bank, N.A. ("U.S. Bank" or "Defendant"), by and through its attorneys, Locke Lord LLP, for the purpose of removing this case to the United States District Court for the District of Massachusetts, respectfully states:

**1.**     **State Court Action.**  Plaintiff Christopher Gillis, on behalf of himself and all others similarly situated ("Plaintiff"), filed a *Class Action Complaint and Demand for Jury Trial* ("*Complaint*") against U.S. Bank on or about August 12, 2021, in the Superior Court of the Commonwealth of Massachusetts, Suffolk County, being numbered Case No. 2184CV01845 on the docket of said Court; see **Exhibit A** attached hereto.

**2.**     **Federal Jurisdiction.**  This Court has subject matter jurisdiction over this matter under the Class Action Fairness Act of 2005 pursuant to 28 U.S.C. §§ 1332(d), 1453 ("CAFA").

      a.     Plaintiff has alleged that he is a citizen of Massachusetts. *Compl.* ¶ 1. 28 U.S.C. § 1332(2).

      b.     U.S. Bank is a national bank chartered under the National Bank Act and a subsidiary of US Bancorp, a publicly traded company. U.S. Bank is a national banking association. A national banking association's citizenship is determined solely by the

location of its main office as designated in its articles of association. *See* 28 U.S.C. § 1348; *Wachovia Bank v. Schmidt*, 546 U.S. 303, 318 (2006); *Rouse v. Wachovia Mortg., FSB*, 747 F.3d 707, 709 (9th Cir. 2014) ("[U]nder 28 U.S.C. § 1348, a national bank is a citizen only of the state in which its main office is located."). U.S. Bank's main office is located in Ohio. Therefore, U.S. Bank is a citizen of Ohio for diversity purposes.

      c.     This case is properly removed to this Court pursuant to CAFA because (1) Plaintiff alleges that the putative class contains "at least 100 people," (*Compl.* ¶ 149); (2) the citizenship of at least one class member is different than that of U.S. Bank (*Compl.* ¶ 1); and (3) the aggregate amount placed in controversy by the claims of Plaintiff and the proposed putative class members exceeds the sum or value of $5,000,000.00, exclusive of interests and costs.

      d.     CAFA provides that the minimal diversity requirement is met if "any member of a class of plaintiffs is a citizen of a state different from any defendant." 28 U.S.C. § 1332(d)(2)(A). This requirement is met here, as the named Plaintiff and U.S. Bank are citizens of different states for purposes of diversity jurisdiction as set forth in sections 2.a. and 2.b. *supra*. Because Plaintiff is a citizen of the Commonwealth of Massachusetts and U.S. Bank is a citizen of Ohio, minimal diversity is established under CAFA.

      e.     The *Complaint* alleges that there are "at least one hundred (100) people" who are members of the class. *Compl.* ¶ 149. Accordingly, on the face of the *Complaint*, the aggregate number of the individuals in the putative class is in excess of 100 for purposes of 28 U.S.C. § 1332(d)(5)(B).

      f.     Under CAFA, the claims of all putative class members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of

2

$5,000,000.00. *See* 28 U.S.C. § 1332(d)(6). Here, assuming the truth of Plaintiff's allegations and aggregating the alleged damages for all putative class members, as the Court must, the relief sought by the *Complaint* exceeds $5,000,000.00, exclusive of interest and costs. *See Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014) (holding that for purposes of determining jurisdiction under CAFA, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold"). Plaintiff alleges that the putative class consists of (1) all persons who were charged and paid a Payoff Statement Fee relating to a mortgage recorded in Massachusetts (*Compl.* ¶ 146(a)), (2) all persons who were charged and paid a Discharge Recording Fee relating to a written Discharge of a mortgage recorded in Massachusetts (*Compl.* ¶ 146(b)), and (3) all persons who were charged a paid a Payoff Statement Fee or Discharge Recording Fee that was included as part of the Total Amount Due on a Payoff Statement for a Property in Massachusetts (*Compl.* ¶ 146(c)). U.S. Bank's records establish that the putative class paid in excess of $1,700,000.00 during the relevant period. Moreover, Plaintiff seeks treble damages under Chapter 93A as well as attorneys' fees. *See F.C.I. Realty Tr. v. Aetna Cas. & Sur. Co.*, 906 F. Supp. 30, 31 (D. Mass. 1995) (holding treble damages "must be considered to the  extent claimed in determining the jurisdictional amount"); *Spielman v. Denzyme Corp.*, 251 F.3d 1, 7 (1st Cir. 2001) (attorneys' fees in Chapter 93A claims must be considered in determining the amount in controversy because the statute "allows plaintiffs to collect attorney's fees as part of their damages"). While U.S. Bank disputes that Plaintiff is entitled to any damages, the amount potentially at issue is well in excess of the jurisdictional amount. For these reasons, on the face of the *Complaint*, the

aggregate damages sought by Plaintiff on behalf of the putative class exceed $5,000,000 for purposes of 28 U.S.C. § 1332(d)(2).

        g.     In sum, the Court has jurisdiction pursuant to CAFA because (1) there are more than 100 putative class members; (b) there is minimal diversity between the parties; and (c) the amount in controversy exceeds $5,000,000.00. *See* 28 U.S.C. § 1332(d)(2).

**3.**     **Proper Venue**. This action is removable to this Court under 28 U.S.C. § 1441 because this Court would have had original jurisdiction over Plaintiff's claims had Plaintiff elected to initially file the action in federal court. This Court is the United States District Court for the district and division embracing the place where the state court action is pending and is, therefore, the appropriate court for removal pursuant to 28 U.S.C. § 1441(a).

**4.**     **Timeliness of Removal Petition.** Plaintiff filed the *Complaint* on or about August 12, 2021. Defendant has not yet been served. Removal of this action is therefore timely under 28 U.S.C. § 1446(b). *See* **Exhibit B** attached hereto.

**5.**     **Compliance.** Defendant will promptly file a copy of this Notice of Removal with the Clerk of the Superior Court for Suffolk County, where this action is pending and will serve such notice on Plaintiff in compliance with 28 U.S.C. §1446(d). Certified copies of the entries in the Superior Court docket will be filed in connection with Defendant's *Local Rule* 81.1(a) submission.

**6.**     **Relief Requested.** Defendant respectfully requests that the United States District Court for the District of Massachusetts accept this Notice of Removal, and that it assume jurisdiction of this cause of action and issue such further orders and processes as may be necessary to bring before it all parties necessary for the trial hereof.

4

Respectfully submitted,

Defendant,

U.S. BANK, N.A.

By its Attorneys,
LOCKE LORD LLP,


/s/ Krystle G. Tadesse
Krystle G. Tadesse (BBO #673899)
2800 Financial Plaza
Providence, RI 02903
401.274.9200
krystle.tadesse@lockelord.com

and

Stephanie Sprague (BBO # 667714)
111 Huntington Avenue
Boston, MA  02199
617.239.0222
stephanie.sprague@lockelord.com

Date:  September 17, 2021

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on the 17th day of September, 2021, this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be mailed, via overnight delivery, to those indicated as non-registered participants, namely:

Jeffrey S. Morneau, Esq.
Chelsea Choi, Esq.
Connor & Morneau, LLP
273 State Street, 2nd Floor
Springfield, MA  01103


/s/ Krystle G. Tadesse

97067261v.3